**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DANIEL PATRICK DALY,<br><br>Plaintiff,<br><br>v.<br><br>WOODSHIRE APARTMENTS d/b/a TWINBROOK VILLAGE APARTMENTS; HENSYN INC. d/b/a KNOLLWOOD GARDENS,<br><br>Defendants. | Civil Action No. 07-2526 (JAG)<br><br>**OPINION** |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motion to dismiss by Defendants Woodshire Apartments, d/b/a Twinbrook Village Apartments ("Twinbrook"), and Hensyn Inc., d/b/a Knollwood Gardens ("Knollwood," and, collectively with Twinbrook, the "Defendants"), pursuant to FED. R. CIV. P. 12(b)(6). For the reasons set forth below, Defendants' motion to dismiss shall be granted, in part, and denied, in part.

## I. BACKGROUND

### A. The Allegations

In 1969, Henry Schwartz, co-owner of Defendants, hired Plaintiff Daniel Patrick Daly ("Plaintiff") to work as a Superintendent at a separate apartment complex he owns, Parkwood Gardens ("Parkwood"), located in Edison, New Jersey. (Compl. ¶¶ 12-13.) After several

promotions, Plaintiff was asked to work as a Property Manager at Brooklawn Garden Apartments ("Brooklawn"), another apartment complex owned and managed by Henry Schwartz. (Id. ¶ 18.) In 1990, Plaintiff was asked to serve as Property Manager for Knollwood, a 274-unit complex located in Middletown, New Jersey, as well. (Id. ¶ 19.) After fulfilling this role for one year, Henry Schwartz asked Plaintiff to cease working at Brooklawn, and to take on responsibilities as a Property Manager at Twinbrook. (Id. ¶ 21.) Plaintiff worked as a Property Manager at Knollwood and Twinbrook until approximately June of 2003, when he was asked to focus his attention solely on Twinbrook. (Id. ¶¶ 23, 26.)

In November of 2004, Marko Ruso ("Ruso"), Henry Schwartz's son-in-law, began working at Twinbrook. (Id. ¶ 28.) Within several weeks of his arrival, Ruso asked Plaintiff his age. (Id. ¶ 30.) After Plaintiff replied that he was sixty-seven years old, Ruso stated, "It's almost that time for you. Are you going to retire this year?" (Id.) Plaintiff replied that he had no plans to retire. (Id.) Shortly thereafter, Ruso "stripped Plaintiff of [his] authority as Property Manager," and began managing Twinbrook. (Id. ¶ 31.) Plaintiff also alleges that Ruso "humiliated Plaintiff in front of the employees that Plaintiff had formerly supervised[,] and he continued to harass Plaintiff." (Id. ¶ 32.)

In February of 2005, Plaintiff was diagnosed with cancer. (Id. ¶ 35.) Plaintiff took disability leave from work the following month, and remained absent from work for six months. (Id.)

In August of 2005, Plaintiff met with Elan Schwartz,[1] Henry Schwartz's son, to discuss

---

[1] The Complaint states that Elan Schwartz also owns and manages Defendants. (Id. ¶ 11.)

his return to work. (Id. ¶¶ 36-38.) During the conversation, Elan Schwartz asked Plaintiff his age, and Plaintiff replied, "I"m sixty-eight years old." (Id. ¶ 38.) Elan Schwartz then informed Plaintiff that all positions were full, but that he would touch base with Plaintiff again after speaking with his father. (Id.)

On September 8, 2005, Plaintiff met with Henry and Elan Schwartz to again discuss his return to employment. (Id. ¶¶ 39-41.) Henry Schwartz told Plaintiff that the Property Manager position he previously held had been filled, but assured Plaintiff that he would check to see if any other positions were available. (Id. ¶ 41.) On September 30, 2005, after making several unreturned calls to Henry and Elan Schwartz, Plaintiff was informed by Elan Schwartz that there was no position available for him, "and suggested that Plaintiff go on unemployment." (Id.) Upon information and belief, Plaintiff claims that his position was ultimately filled by an individual who is approximately thirty-five years old. (Id. ¶ 46.)

**B. The EEOC Charge**

On May 5, 2006, Plaintiff contacted the Equal Employment Opportunity Commission (the "EEOC") regarding the alleged employment discrimination he experienced. (Letter from Diane Upshaw, EEOC Investigator, re: Inquiry No. 524-2006-00736N, attached as Ex. A to Certification of Patrick C. McGuinness ("McGuinness Cert.").) In response, the EEOC sent Plaintiff several intake questionnaires to complete. (Id.) The cover letter stated that the questionnaires must be returned within sixty days. (Id.)

The cover letter also advises Plaintiff that he has not yet filed a charge of discrimination. Specifically, the letter states,

**Please be advised that at this time, you have not filed a charge of**

> **discrimination. In order for the EEOC to have jurisdiction to investigate any complaint, and to protect your legal rights, a charge of discrimination must usually be filed within 300 calendar days of the alleged violation.** It is your responsibility to insure that your charge of discrimination is filed in a timely manner. **Please be advised that at this time, you have not filed a charge of discrimination.**

(Id.) (emphasis in original)

Plaintiff promptly completed the questionnaires, as well as a sworn information statement, and returned the documents to the EEOC. (Letter from Patrick C. McGuiness re: Daniel Patrick Daly Inquiry No. 524-2006-00736N, attached as Ex. B to McGuinness Cert.) His cover letter, dated May 31, 2006, stated, "Please inform me as soon as possible regarding of [sic] further actions." (Id.) The EEOC received Plaintiff's completed questionnaires on June 9, 2006. (FedEx Tracking Shipment Detailed Results, attached as Ex. C to McGuinness Cert.)

On July 20, 2006, after conducting an investigation, the EEOC interviewed Plaintiff. (Notice of Charge of Discrimination, attached as Ex. A to Certification of Jodi Lee Alper.) At the interview, Plaintiff signed an EEOC "Charge of Discrimination" that was prepared by an EEOC official, which summarized the details Plaintiff provided to the EEOC about the discrimination allegations. Id. On or about August 2, 2006, the EEOC sent a copy of the EEOC Charge of Discrimination to Defendants. Id.

Ultimately, the EEOC issued a Determination dated February 28, 2007, which found that Plaintiff was denied a leave of absence due to his disability, in violation of the Americans with Disabilities Act of 1990. (Determination letter, attached as Ex. E to McGuinness Cert.) The EEOC declined to find, however, that there existed evidence of discrimination on the basis of Plaintiff's age or race. (Id.) While the disability claim remains pending before the EEOC,

Plaintiff was granted the right to sue based on his allegations of race and age discrimination. (Id.)

On May 30, 2007, Plaintiff filed a complaint in this Court against Defendants (the "Complaint"), alleging the following causes of action: (1) age discrimination under the Age Discrimination in Employment Act (the "ADEA"); (2) intentional infliction of emotional distress; and (3) breach of the duty of good faith and fair dealing. (Compl. ¶¶ 47-52.)

## II. STANDARD OF REVIEW

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), while abrogating the decision in other respects). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 127 S. Ct. at 1964-65. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. at 1965.

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974 (abrogating Conley, 355 U.S. 41). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000).

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340).

The court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. See Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357. Any further expansion beyond the pleading, however, may require conversion of the motion into one for summary judgment. FED. R. CIV. P. 12(b).

## III. ANALYSIS

### A. The Statute of Limitations Does Not Bar Plaintiff's ADEA Claim

Defendants contend that the statute of limitations bars Plaintiff's age discrimination claim because the EEOC Charge of Discrimination was filed more than 300 days after the last alleged discriminatory act. "The ADEA requires that prospective plaintiffs provide the EEOC with an

opportunity to resolve the dispute without recourse to litigation before proceeding on their own." Bihler v. Singer Co., 710 F.2d 96, 97 (3d Cir. 1983). To this end, a plaintiff must file a charge of age discrimination with the EEOC, within 300 days after the alleged unlawful practice occurred, before bringing a civil action against a defendant. 28 U.S.C. § 626(d)(2).[2] This requirement serves to provide notice to both the EEOC and the employer that a complaint of discriminatory conduct has been filed against the employer. Bihler, 710 F.2d at 99 (holding that plaintiff's letter to employer did not constitute the filing of a charge under 29 U.S.C. § 626(d) because the letter notified the employer, but not the EEOC, of plaintiff's age discrimination allegations).

Defendants assume, and Plaintiff accepts, that the ADEA cause of action accrued on September 8, 2005, when Elan Schwartz last informed Plaintiff that there was no position available for him. Thus, Plaintiff must have filed a "charge" on or before July 5, 2006, in order to conform with the requirements of the ADEA.

In order to satisfy 29 U.S.C. § 626(d), "notice to the EEOC must be of a kind that would convince a reasonable person that the grievant has manifested an intent to activate the Act's machinery." Id. "In determining whether a particular communication evinces the requisite intent, courts consider the content and effect of the communication, including what the EEOC does upon receiving the communication." Gharzouzi v. N.W. Human Svcs. of Penn., 225 F. Supp. 2d 514, 522 (E.D. Pa. 2002). "The charge "must sufficiently inform the EEOC whether it is to investigate immediately or to await further communication from the [potential] plaintiff before investigation." Id. (citing Bihler, 710 F.2d at 100).

---

[2] New Jersey law does not impose a shorter limitations period, but instead requires plaintiffs to adhere to the strictures imposed under 29 U.S.C. § 626(d). See Nolan v. Otis Elevator Co., 505 A.2d 580, 586 n.1 (N.J. 1986).

The Code of Federal Regulations requires a charge to contain "a written statement sufficiently precise to identify the parties, and to describe generally the practices complained of." Id. at 521-22 (citing 29 C.F.R. § 1601.12(b) (1999)). The charge must "contain two components: (1) a written statement precise enough to identify the parties and to describe generally the practices complained of[,] and (2) the manifestation of an intent to activate the EEOC's mechanisms." Id.

The Third Circuit has found that a letter sent to the EEOC constituted a charge, for purposes of meeting the statute of limitations requirement. In Rabzak v. Berks County, plaintiff sent a letter to the EEOC, within 300 days of the discriminatory conduct, alleging age discrimination against his employer. 815 F.2d 17, 19-20 (3d Cir. 1987). The letter was addressed to the wrong agency, however. Id. Although the letter was forwarded to the EEOC within the 300-day deadline, Plaintiff was unable to complete the official Charge of Discrimination form furnished by the EEOC until after the 300-day deadline. Id. The District Court for the Eastern District of Pennsylvania held that plaintiff's ADEA claim was untimely because he did not file a charge within 300 days of the complained of conduct. Id. at 18.

The Third Circuit reversed the lower court's decision, holding that the plaintiff had filed a timely charge, in compliance with 29 U.S.C. § 626(d), when he drafted the letter to the EEOC complaining of age discrimination. Id. at 20. In so holding, the Third Circuit noted that "the charge-filing provisions are to be liberally construed." Id. at 20. The Third Circuit emphasized that the letter identified the plaintiff and the defendant, and generally alleged the discriminatory conduct. Id. It also highlighted that plaintiff sent the letter to the EEOC, as opposed to the employer, to seek vindication from the discriminatory conduct. Id.

Here, the EEOC received the questionnaires completed by Plaintiff, as well as a sworn information statement describing the incidents supporting his allegations, on June 9, 2006. The questionnaires and the information statement described the targets of Plaintiff's complaint and the facts supporting his allegations. The EEOC received the questionnaires and information statement within the 300-day timeliness requirement imposed by 29 U.S.C. § 626(d)(2), as Defendants' unlawful failure to rehire occurred, allegedly, on September 30, 2005. Although Plaintiff's submission of the questionnaires and the sworn information statement were not formally labeled by the EEOC as a charge, Plaintiff in effect placed the EEOC on notice of his intent to utilize the agency to resolve his complaint. Indeed, the EEOC responded to Plaintiff's questionnaires by conducting an investigation and scheduling an interview with Plaintiff.

Given the liberal manner in which this Court must construe the 300-day limitations period, Plaintiff's Complaint shall not be designated as untimely.

**B. Intentional Infliction of Emotional Distress**

Defendants also argue that Plaintiff's intentional infliction of emotional distress claim should be dismissed because the termination of employment, alone, is insufficient to satisfy the requisite "extreme and outrageous" element. To support its argument in favor of dismissal of this claim, Defendants rely in part on the case Borecki v. Eastern International Management Corp., in which the court granted summary judgment in favor of the defendants as to the intentional infliction of emotional distress claim because plaintiff only alleged that he was terminated in retaliation for his alleged disloyalty to his employer and his age, and did not point to any harassment or pattern of conduct. 694 F. Supp. 47, 61 (D.N.J. 1998). The court noted that a valid claim exists where "the [adverse employment] decision is accompanied, or preceded, by

harassing conduct." Id.

This Court finds that Plaintiff alleged the requisite harassment allegation sufficient to withstand dismissal of his intentional infliction of emotional distress claim. The Complaint alleges that Defendants, by way of Ruso, continually harassed Plaintiff in front of other employees. (Compl. 32.) Such harassment, together with Plaintiff's termination, may suffice to substantiate Plaintiff's intentional infliction of emotional distress claim. Based on Plaintiff's accompanying harassment allegation, this Court shall decline Defendants' request for dismissal of the intentional infliction of emotional distress claim.

### C. Breach of Covenant of Good Faith and Fair Dealing

Last, Defendants contend that New Jersey law does not recognize the existence of a covenant of good faith and fair dealing in at-will employment relationships where the employee has no reasonable expectation of indefinite employment. This Court agrees.

"In the absence of a contract, there is no implied covenant of good faith and fair dealing." Nolan v. Control Data Corp., 579 A.2d 1252, 1257 (N.J. Super. Ct. App. Div. 1990); see also Varrallo v. Hammond, Inc., 94 F.2d 842, 848 (3d Cir. 1996). Plaintiff has not alleged in the Complaint the existence of an oral or written contract governing the terms of his employment. His at-will employment status impedes his ability to successfully raise a claim for breach of the covenant of good faith and fair dealing.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss will be granted, in part, and denied, in part. Plaintiff's cause of action for breach of the covenant of good faith and fair dealing shall be dismissed. The remaining state and federal law claims raised in the Complaint shall remain before this Court.

Date: March 25, 2008

S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.